Filed 7/29/13  P. v. Aguayo CA2/1
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B243584 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA387239) |
| v. | |
| JAIME AGUAYO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie A. Swain, Judge.  Affirmed.

Jaime Aguayo, in pro. per.; and Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Jaime Aguayo appeals from a judgment of conviction after a jury trial of one count of inflicting injury on a cohabitant (including a special allegation of using a deadly or dangerous weapon), two counts of assault, one count of criminal threats, two counts of possession of a firearm by a felon, and one count of possession of ammunition by a felon. Aguayo also pled nolo contendere to two counts of disobeying a domestic relations court order. The jury was unable to reach a verdict on three counts. Appellant's appointed counsel filed a brief pursuant to *People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *People v. Wende* (1979) 25 Cal.3d 436, 441-442. After examination of the record, we affirm.

## STATEMENT OF FACTS

At the time of trial in 2012, Aguayo and his ex-girlfriend, Ivon D., had known each other for approximately 15 years. In March or April 2011,[1] Aguayo moved in with Ivon and her mother, sister and daughter.[2] Aguayo and Ivon shared a bedroom in the two-bedroom apartment.

The information charged Aguayo with 12 counts representing several incidents on various dates. The facts related to those counts resulting in conviction are summarized below.

## I. Count 2 – Inflicting Injury on Cohabitant on or about July 1, 2011

On July 1, 2011, at approximately 9 a.m., Ivon was at home watching television with her two-year-old daughter when Aguayo woke up and wanted to argue with her. Ivon asked if she could spend some time with her daughter, Aguayo responded in the negative and dragged Ivon by her hair into their bedroom. Aguayo closed the door, threw Ivon on the bed and whipped her 9 or 10 times with a belt, leaving bruises and welts on her arm, shoulders, a part of her back, the back of her neck and legs.

---

[1] Aguayo testified that he moved in about May 2011.

[2] Ivon's father also lived with them for a short time, but moved out. Ivon's sister mostly stayed over on weekends while she was in school but was home for the summer.

The prosecution introduced into evidence several photographs of Ivon taken on July 4, 2011 and photographs taken at the police station on July 12, 2011, showing her injuries from the July 1, 2011 incident.[3]

The defense presented testimony from Cecilia Valenzuela who testified that sometime during the last week of June or first week of July 2011 she got into a physical altercation with Ivon over rumors Ivon was telling about Valenzuela. Valenzuela described it as a "girl fight," "pulling hair, scratching, rolling on the ground" that lasted approximately 10 to 15 minutes until they were pulled apart by Aguayo and Valenzuela's boyfriend. Valenzuela did not know if Ivon was injured in the fight.

Aguayo testified that he was present for the fight between Ivon and Valenzuela and that Ivon was hit or scratched by Valenzuela. Aguayo had no recollection of hitting Ivon with a belt on July 1, 2011.

## II. Count 3 – Assault by Means Likely to Produce Great Bodily Injury and Count 4 – Criminal Threats on or about July 5, 2011

On July 5, 2011, at approximately 9 p.m., Aguayo and Ivon began arguing, with Aguayo asking Ivon if she was cheating on him or planning to leave him. They went into their bedroom and Aguayo told Ivon that he would kill her if she lied to him or cheated on him. Aguayo slapped Ivon several times, threw her on the bed and choked her until she lost consciousness. When she awoke, Aguayo told her he could take justice into his own hands if she lied to him.[4]

---

[3] Aguayo was charged in count 1 with inflicting injury on a cohabitant related to an incident in a park that occurred sometime between June 1 and June 20, 2011, but the jury was unable to reach a verdict on this count.

[4] The jury was unable to reach a verdict on the firearm enhancement to counts 3 and 4 or on count 13 charging possession of a handgun during this incident. Ivon had testified that during this July 5, 2011 incident, Aguayo had a .22 caliber handgun (owned by her father), which he at one point put in her mouth and at another point "cocked" and put a bullet in the chamber. On cross-examination, Ivon expressed confusion about whether the gun was placed in her mouth. Ivon's father testified to a telephone conversation with Ivon on July 5 or 6, 2011 in which she told him that Aguayo had put a gun in her mouth. Aguayo denied having a gun during the incident.

Aguayo testified that he did not remember an argument with Ivon on July 5, 2011 and denied slapping or choking Ivon.

### III. Counts 7 (shotgun) and 8 (rifles)[5] – Possession of a Firearm by a Felon, Count 9 – Possession of Ammunition by a Felon, and Count 12 – Assault by Means Likely to Produce Great Bodily Injury on or about July 7, 2011

In the apartment were two or three handguns and two rifles owned by Ivon's father, as well as a shotgun and ammunition.[6] When Aguayo moved in, he offered to buy a safe to keep the guns away from children. Aguayo purchased a gun safe and put it in the bedroom he shared with Ivon and Ivon gave him the guns to store.

On July 6, 2011, Ivon took the handguns out of the gun safe and gave them to her sister to hide.[7] Ivon did not take the rifles and shotgun because they were too big to hide.

Ivon testified that on July 7, 2011, at approximately noon, Aguayo noticed the guns were missing and was very angry. Aguayo told Ivon to "get me the guns right now" and she denied knowing what he was talking about. During the argument, Ivon and Aguayo went outside and Aguayo slapped Ivon a few times before going back inside.

Ivon's father happened to be driving by the apartment and saw Aguayo grab Ivon and throw her into the gate at the entrance to the building. Ivon's father parked his car and went to the apartment, finding the door open a few inches and saw Ivon shaking inside. Ivon told her father not to come in, saying she didn't want him to get hurt. Ivon's father stood by the front door and called the police.

Approximately five minutes later, police arrived. The police asked for, and Aguayo provided, the combination to the safe and the police recovered two rifles, a shotgun and ammunition from the safe. Aguayo told officers that the safe was his, some

---

[5] Count 8 of the information was amended by interlineation to read "rifles" plural.

[6] Ivon's father testified that he owned the rifles and handguns, but not the shotgun and was unsure about the ammunition.

[7] Ivon's sister gave them to their mother to hide.

4

of the guns belonged to Ivon's father,[8] Aguayo knew the guns were in the safe, he knew he was not allowed to possess guns because of his status as a felon, the ammunition was his, and he knew he was not supposed to have ammunition.[9]

The officer saw that Ivon had a chipped tooth and redness to her face. The defense introduced evidence of a photograph of Ivon taken on July 7, 2011 showing acne scars on her face, but the arresting officer testified that the photo also showed finger marks on her face.

The parties stipulated that Aguayo had previously been convicted of a felony.

Aguayo testified that all the guns belonged to Ivon's father. Aguayo admitted he bought the gun safe, explaining he wanted to keep the guns away from children, but said it was a gift to the family. He denied knowing on July 7, 2011 that the guns had been moved from the safe and denied that they argued about the guns, instead stating that he and Ivon argued about Ivon not taking care of the apartment and her baby.

Aguayo admitted to slapping and pushing Ivon during the argument. Aguayo testified that this was the first time he ever slapped Ivon, but that they had had a couple of "push and shove" arguments.

Aguayo denied telling police that he knew he was not supposed to possess guns and ammunition because of his felon status or that the handgun was under the couch. Aguayo also denied knowing that he was not supposed to have guns as a convicted felon. He admitted knowing the combination to the gun safe.

---

[8] The testifying officer could not remember which guns Aguayo told him belonged to Ivon's father.

[9] The jury was unable to reach a verdict on the firearm enhancement to count 12 or on count 6 charging possession of a handgun during this incident. Ivon had testified that during the July 7, 2011 incident, she thought Aguayo had a .22 handgun in his pocket because of the way he was moving his hand around but she did not actually see it. Ivon's father testified that he did not see a handgun. After speaking to Ivon's father and Ivon, the police asked defendant where the gun was and he responded under the couch in the apartment. Police recovered a .22 caliber gun under the sofa in the living room.

**IV. Count 10 –Disobeying a Domestic Relations Court Order on or about July 8, 2011 and Count 11 – Disobeying a Domestic Relations Court Order on or about July 13, 2011**

The parties stipulated that on July 7, 2011 an emergency protective order was served on Aguayo and Aguayo violated this order on July 8, 2011 and July 13, 2011, by contacting Ivon by email.

## PROCEDURAL HISTORY

A December 15, 2011 information charged Aguayo in counts 1 and 2 with inflicting injury on a cohabitant (Pen. Code, § 273.5, subd. (a)) on or about June 1 to June 20, 2011 and on or about July 1, 2011 respectively; in count 3 with assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)) on or about July 5, 2011; in count 4 with criminal threats (§ 422) on or about July 5, 2011;[10] in counts 6 through 8 with possession of a firearm by a felon (§ 12021, subd. (a)(1)) on or about July 7, 2011; in count 9 with possession of ammunition by a felon (§ 12316, subd. (b)(1)) on or about July 7, 2011; and in counts 10 and 11 with disobeying a domestic relations court order (§ 273.6, subd. (a)) on or about July 8, 2011 and on or about July 13, 2011, respectively. The information further alleged that Aguayo personally used a deadly or dangerous weapon in the commission of count 2 (§ 12022, subd. (b)(1)) and had personally used a firearm in the commission of counts 3 and 4 (§ 12022.5, subd. (a)). The information also alleged that Aguayo had previously been convicted of a strike offense (§ 667, subds. (b)-(i), & 1170.12 subds. (a)-(d)) and a serious felony (§ 667, subd. (a)(1)).

Appellant pled not guilty and denied these allegations.

A July 6, 2012 amended information charged Aguayo in count 12 with an additional count of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)) on or about July 7, 2011, and in count 13 with an additional count of possession of a firearm by a felon (§ 12021, subd. (a)(1)) on or about July 5, 2011. The amended

---

[10] At the December 2, 2011 preliminary hearing, the court found insufficient cause and dismissed count 5, charging Aguayo with a felony under section 245, subdivision (a)(1) (assault with a deadly weapon).

information further alleged that Aguayo personally used a firearm in the commission of count 12 (§ 12022.5, subd. (a)).

Appellant pled not guilty and denied these new allegations.

At the close of the prosecution's case, Aguayo moved to dismiss pursuant to section 1118.1, and the trial court denied the motion. Aguayo then withdrew his plea of not guilty on counts 10 and 11 for disobeying a domestic relations court order, and entered a plea of nolo contendere to those counts.

The jury found Aguayo guilty on seven counts: count 2 for inflicting injury to a cohabitant on or about July 1, 2011; count 3 for assault by means likely to produce great bodily injury on or about July 5, 2011; count 4 for criminal threats on or about July 5, 2011; count 7 for possession of a firearm (shotgun) by a felon on or about July 7, 2011; count 8 for possession of firearms (rifles) by a felon on or about July 7, 2011; count 9 for possession of ammunition by a felon on or about July 7, 2011; and count 12 for assault by means likely to produce great bodily injury on or about July 7, 2011. The jury also found to be true the special allegation in count 2 that Aguayo personally used a dangerous or deadly weapon. The jury deadlocked on three counts and the court declared a mistrial on those counts: count 1 for inflicting injury to a cohabitant on or about June 1, 2011 to June 20, 2011; count 6 for possession of a firearm (handgun) by a felon on or about July 7, 2011; and count 13 for possession of a firearm (handgun) by a felon on or about July 5, 2011. The jury was also unable to reach a verdict on the special allegations in counts 3 and 4 that Aguayo personally used a firearm (a handgun) in the commission of those counts.[11]

Aguayo waived his right to a jury trial on his prior conviction. Aguayo later stipulated to his prior strike conviction. The court denied Aguayo's *Romero*[12] motion to strike the prior strike conviction.

---

[11] The prosecution at sentencing moved to dismiss these allegations.

[12] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

After argument from counsel, the court sentenced Aguayo to a total aggregate term of 18 years and eight months in state prison. Specifically, the court sentenced Aguayo to a middle term of three years on count 2 (§ 273.5, subd. (a)), doubled pursuant to section 1170.12, subdivisions (a) to (d), for a base term of six years with an additional consecutive term of one year for the true finding that Aguayo personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)), for a total of seven years as the principal term.

On counts 3 and 12 (§ 245, subd. (a)(1)), the court sentenced Aguayo on each count to one-third the middle term of three years doubled pursuant to the three strikes law, for a total of two years on each count to run consecutively to the sentence in count 2.

On count 4 (§ 422) and on count 7 (§ 12021, subd. (a)(1)), the court sentenced Aguayo on each count to one-third the middle term of two years doubled pursuant to the three strikes law, for a total of one year and four months on each count to run consecutively to the sentence in count 2.

On count 8 (§ 12021, subd. (a)(1)) and on count 9 (§ 12316, subd. (b)(1)), the court sentenced Aguayo on each count to one-third the middle term of two years doubled pursuant to the three strikes law, for a total of one year and four months on each count to run concurrently to the sentence in count 2.

On counts 10 and 11 (§ 273.6, subd. (a)), the court sentenced Aguayo to one year each to run concurrently with all other time.

On the prior prison term under section 667, subdivision (a), the court sentenced Aguayo to an additional consecutive term of five years.

Aguayo filed a timely notice of appeal.

## DISCUSSION

We appointed counsel to represent defendant on appeal. After examination of the record, appointed counsel filed an opening brief raising no issues and asking this court to independently review the record. (*People v. Wende*, *supra*, 25 Cal.3d at p. 441.) On March 18, 2013, we sent letters to Aguayo and appointed counsel, directing counsel to immediately forward the appellate record to Aguayo and advising Aguayo that he had 30 days within which to personally submit any contentions or issues he wished us to

8

consider. Aguayo filed a handwritten letter brief in the trial court on March 20, 2013 and, after a delay, it was forwarded to this court. We granted permission to file it late on June 26, 2013. In his letter brief, Aguayo raises a number of points and arguments which are without merit.[13]

Aguayo argues that he did not know that placing the firearms inside a safe would get him "into trouble" even though he was no longer on parole or probation. Whether defendant was aware that it was illegal for him to possess a firearm is not a mistake of fact, but rather a mistake of law, which is not a defense. (*People v. Snyder* (1982) 32 Cal.3d 590, 592-593.)

Aguayo also contends that Ivon contacted him to meet on July 13, 2011 in violation of the emergency protective order. Aguayo's no contest plea on count 11, however, limits the potential scope of his appeal to "constitutional, jurisdictional, or other grounds going to the legality of the proceedings" and "[g]rounds that arose after entry of the plea and do not affect the plea's validity." (Pen.Code, § 1237.5, subd. (a); Cal. Rules of Court, rule 8.304(b)(4)(B).)

Aguayo also asserts that Ivon told him at this July 13, 2011 meeting that she did not want to press charges, but that a police officer threatened to take away her daughter unless she testified against Aguayo. Nothing in the record supports this assertion.

Aguayo also raises a number of claims related to an ineffective assistance of counsel claim. "'To establish ineffective assistance of counsel, a [defendant] must demonstrate that (1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the [defendant] to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the [defendant]. [Citations.] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citation.]' [Citation.]" (*In re Jones* (1996) 13 Cal.4th 552, 561.)

---

[13] Because Aguayo directed his letter to the trial court, he also asked the trial court to reconsider his sentence. We do not address this request on appeal.

Here, Aguayo contends that his trial counsel failed to make a *Romero* motion to strike a prior strike. In fact, trial counsel made such a motion but it was denied.

Aguayo also contends that his trial counsel failed to call a witness that would have "proved Ivon [D.] is a criminal" and her testimony should not have been held "valid," to investigate Ivon D. whom Aguayo contends has an arrest record, and failed to develop testimony showing that Ivon had stolen money and a car from Aguayo and therefore had a motive to lie at trial. Defendant's factual assertions, however, are not part of the record before this court, and therefore cannot be considered.

Accordingly, Aguayo's ineffective assistance of counsel claim fails. He has not shown his counsel's representation was deficient. Nor has he shown a reasonable probability that any of the things his attorney "failed" to do would have resulted in a more favorable outcome for him.

We have examined the entire record and are satisfied that defendant's appointed counsel has fully complied with his responsibilities and that no arguable issues exist. (*People v. Kelly*, *supra*, 40 Cal.4th at pp. 109-110; *People v. Wende*, *supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                         CHANEY, J.

We concur:


MALLANO, P. J.


JOHNSON, J.


10